BELL *et al.* v. KAYE.

[89 South. 910.   No. 22100.]

ELECTRICITY. *Waters and water courses. Bill to enjoin rates fixed by municipal ordinance must allege them unreasonable and offer to pay a reasonable rate.*

Where a bill is filed in equity to enjoin the collection of rates fixed by a municipal ordinance, it is necessary for the complainants to allege that said rates are unreasonable and to offer to pay a reasonable rate, and, where this is not done, relief will be denied, although the ordinance fixing the rate was not passed in conformity to statutory requirements, the ordinance not being the foundation of the right to collect rates for such service.

APPEAL from chancery court of Prentiss county.

HON. A. J. McINTYRE, Chancellor.

Suit by S. D. Bell and others against John W. Kaye. From a judgment dismissing the bill, the plaintiffs appeal. Affirmed.

*E. C. Sharp,* for appellant.

Quoting from section two of the brief for appellee: "Appellants ask relief from the payments of the rates complained of, yet at no time do they allege in their bill that these rates are unreasonable or exorbitant, nor do they show any injustice in the rates." It is true that no such allegation is made in the bill. It would have been impos-

sible. to have truthfully made such averment for the reason that the act, ordinance or order or whatever you may designate it, is so vague, uncertain and indefinite that it can be interpreted to suit the convenience of the appellee. If appellants were allowed to interpret it, it would no doubt be reasonable from their point of view. , On the other hand with appellee to interpret it and collect according to his interpretations it would doubtless be unreasonable, and it was by his interpretations that appellant would and will have to settle if not protected by this court.

And just to show how vague, indefinite and uncertain it is, I am going to take the liberty of submitting a little problem in mathematics based upon the ordinance in question. If you consume ten thousand gallons of water and thirty kilowatts of electric current during the month of April, 1921, how much will you owe appellee at the prices named in the pretended ordinance in question on April 5,. 1921? How do you arrive at the amount?

What were the excess rates promulgated August 10, 1920, and by whom were they promulgated? How many gallons of water and how much electric current is allowed for the minimum charges fixed and how do you ascertain the amount?

If this learned court cannot arrive at the correct answer to the above problem, how can the ordinary citizen hope to ascertain whether or not the bill which he may be called to pay is correct or incorrect, reasonable or unreasonable? It is not necessary to set out in detail the injury, inconvenience and injustice that would and could be done by depriving the appellants of lights and water because of their refusal or failure to pay back or to pay such amount as would be demanded by appellee when appellants had no possible way to ascertain the amounts actually due.

This ordinance, so called, if enforceable would be more effective in the hands of a profiteer than a shotgun in the hands of a highwayman. Under its terms appellee could demand whatsoever he pleased and enforce the collection with the sanction of the municipal law. He could collect by

suit, if he so desired because no one could successfully dispute the account or he could immediately deprive the patron of lights and water for failure to pay the bill rendered, regardless of the hardships, inconveniences or injustice to the consumer.

It would be dangerous for the court to hold that such a so-called ordinance could be enforced and that those affected or injured thereby could not invoke the aid of a court of equity.  28 Cyc. 354.

"Taxpayers cannot contest municipal ordinances or acts mainly upon the ground that they are unauthorized or invalid, but they may judicially contest the validity of any ordinance or resolution or official act which prejudicially affects their rights as taxpayers by increasing the burden of taxation or otherwise. This they may do by *certiorari* to review the ordinance or resolution by suit to have the ordinance declared invalid, by injunction to restrain threatened wrongful action on one part of the municipal authorities, or on the part of the third person pursuant to authority improperly granted."   28 Cyc. 1734-1736 (E).   "An injunction will also be granted when the authorities are proceeding in violation of constitutional, statutory, or charter requirements as to how the contract shall be made or awarded."   28 Cyc, 1739.   As in this case where they proceeded by contract or agreement where the statute provides that rates can only be fixed by ordinance and the requisites of a valid ordinance are clearly defined on pages 351 and 378 of volume 28 Cyc.

Counsel for appellee seems to have misconstrued the holding of the court in the case of *Griffin* v. *Vicksburg Water Works Co.*, 88 Miss. 371.  The court in that case said:

"Granting that the company is lawfully invested with authority to fix its rates, then such rates being fixed by it within the maximum limit allowed by charter or allowed by the duly authorized ordinance is by the court presumed to be reasonable; and it is not permissible for each individual citizen in any controversy that may arise to have the

question passed upon, which certainly does not mean that a void ordinance and one that is so uncertain that no one can correctly interpret it, shall not be contested by one prejudiced or affected thereby."

We concede that if the ordinance has been duly passed in strict conformity with the statutory requirements, was reasonably certain and not retroactive in effect or for a fixed time in the future, and was not defective in a few other ways that an injunction would not be proper. In other words if the ordinance was legal in all respects, a citizen would not be permitted to contest it simply because he thought the rates, legally and regularly passed upon and fixed upon by the mayor and board of aldermen were too high.

If the municipal authorities could fix rates for eight monts back why could they not fix them for twenty-four months in the past? If the railroad commission should pass an order similar to the ordinance in question providing for the collection of additional rates for eight months prior to the date of the passage and so worded it that no one could tell the correct rate for the future but left the rates to be paid interpreted solely by the railroads, would this court hold that a shipper could not invoke the aid of a court of equity in protecting his legal rights?

Substitute the municipal authorities for the railroad commission and the water and light plant for the railroad and you have this exact case. Therefore we submit that the decree should be reversed.

*A. T. Stovall,* for appellee.

The contention of appellee is that the appellants have failed utterly to state a case in their bill for injunction, and that they have not shown themselves entitled to the relief sought, these deficiencies being apparent from the bill itself.

First: Appellants have not indicated any willingness or inclination to pay, nor have they tendered in their bill or in court, any rate whatever in excess of the old rate declared to be insufficient by the court on August 10, 1920, though

they come to a court of equity asking to be relieved from paying the prescribed rate for service rendered them by appellee. In this important particular, appellants' bill fails for want of equity. Measured by the Golden Rule of equity jurisprudence, "He that seeks equity must do equity," it falls far short of the standard required of those who would invoke the aid of the equity court.

To support this contention, we cite the following authorities: Pomeroy's Equity Jurisprudence (New Ed.), sec. 393, also note 2a thereunder; *Dean* v. *Robertson,* 64 Miss. 196, 1 So. 159; *Hamilton* v. *Halpin,* 68 Miss. 99, 8 So. 741; *Smith* v. *Birmingham* (Ala.), 16 So. 123.

Also, quoting from 22 Cyc, page 930 (IV) : "Plaintiff must allege that he has done, or is willing to do, everything which is necessary to entitle him to the relief sought, in preparing his petition for injunction, in order to make it such a bill as could be entertained by an equity court."

Second: Appellants ask relief from the payment of the rate complained of, yet at no time do they allege in their bill that these rates are unreasonable or exorbitant, nor do they show any injustice in the rates. And Third: The bill does not show that there is any threatened, imminent, or impending injury, from which extraordinary relief should be granted.

In this connection, we remark that courts of equity do not function in vain or trivial matters. The discussion of equity jurisdiction in 21 Corpus Juris, page 157, sec. 139, contains this paragraph: "Equity will not act in anticipation of merely possible future controversies; plaintiff's right must have been actually invaded or if the relief sought is preventive, there must be a state of affairs which actually threatens such right and calls for present relief." We quote also from the subject, "Injunctions." 22 Cyc, page 927 (Ill.).

Plaintiff must clearly show the threats or acts of defendant which cause him to apprehend future injury (IV). The bill must allege facts which clearly show that plaintiff will sustain a substantial injury because of the acts com-

plained of . . , (c) it is not sufficient simply to allege that the injury will be irreparable but the facts must be stated so that the court may see that the apprehension of irreparable injury is well founded.

Fourth: Appellant's bill fails to show that adequate relief could not have been obtained by them in an action of law, nor do they allege the insolvency of defendant as a reason for their seeking the extraordinary remedy of an injunction writ.

We respectfully refer the attention of the court to 22 Cyc, page 928 (B): "As the jurisdiction of equity depends on the lack of an adequate remedy at law, a bill for an injunction must state facts from which the court can determine that the remedy at law is inadequate. If the inadequacy of the legal remedy depends on defendant's insolvency, the fact of insolvency must be positively alleged." (Injunctions.).

Fifth: Equity does not interfere to restrain a contemplated act, the results of which may necessitate a multiplicity of suits where the only ground sought is that the parties are numerous, unless the subject-matter of the contemplated suits is of equitable cognizance: *Tribette* v. *Ill. Cent. R. R.,* 70 Miss. 182, 12 So. 32, also, 35 A. S. Repts. 642, 19 L. R. A. 660; *Cumberland T. & T. Co.* v. *Williamson,* 101 Miss. 1, 57 So. 559.

Sixth: The action of the chancellor in sustaining the demurrer and motion to dismiss the bill was entirely proper in the light of the following authority: Hemingway's Mississippi Code, section 381, 621 (1906); *Evans* v. *Money,* 104 Miss. 264, 61 So. 309, in which case it was held that the bill may be dismissed when the demurrer thereto is sustained, and the injunction dissolved. Quoting:

"In this case appellant contended that the chancellor erred in dismissing the bill of complaint in the decree sustaining the demurrer and dissolving the injunction." Quoting section 621 of the Code of 1906, *supra,* "when on motion an injunction shall be wholly dissolved, the bill of complaint shall be dismissed of course, with cost, unless

sufficient cause be shown against its admission at the next succeeding term of the court." The court continues:

"The decision upon demurrer practically disposes of the case. The decree shows that appellant asked for, and was by the chancellor granted, an appeal from his decision." A refusal to continue the injunction amounted to a final settlement of the controversy. The statute provides that the dissolution of the injunction such as in the present case carries with it, as of course a dismissal of the bill of complaint.

Counsel for appellee takes the position that it matters not for the purpose of this appeal, whether the ordinance or order passed by the board of aldermen of the town of Booneville on April 5, 1921, is void, or whether it is regular and legal. Accordingly, no lengthy brief of argument will be submitted on this point, but some authorities are here cited in reply to appellant's brief on this point.

First: The motives actuating the passage of an order by a legislative or municipal body cannot be called in question by the courts. *Jones* v. *Loving,* 55 Miss. 109; *Kittinger* v. *Buffalo,* 54 N. E. 1081, 1087.

Second: Taxpayers cannot interfere with the exercise of the discretionary powers of municipal authorities in the absence or fraud or abuse, or to restrain or contest acts of the municipal authorities, although unauthorized or illegal, which do not affect their rights as taxpayers. *Griffith* v. *Vicksburg Waterworks,* 40 So. 1011; 28 Cyc, p. 1732 (E), authorities notes 92 and 95; *Kittinger* v. *Buffalo, supra.* Distinction must be made between a case where the act of a municipality affects plaintiff merely as a citizen and where it directly affects his rights as a taxpayer. 28 Cyc, 1736 (4a).

ETHRIDGE, J., delivered the opinion of the court.

The appellants filed a bill in the chancery court to enjoin the appellee from collecting rates for water and light services, the appellee being the owner of the water and

light plant at Booneville, said rates being fixed by the
mayor and board of aldermen after a suit between the ap-
pellee and the city adjudging former rates insufficient com-
pensation. The bill alleges that the appellants are each pa-
trons of the appellee and are users either of the electric
current or water or both furnished by Kaye. It is further
alleged that a suit was instituted by Kaye in 1920 asking
the cancellation of an order passed by the board of mayor
and aldermen in 1919 fixing the rates to be charged, and
that on hearing of said suit the ordinance was declared
void, but the court declined to fix rates, holding it had no
such power. From said order an appeal was taken by the
town of Booneville with *supersedeas,* but in March, 1921,
the said appeal was dismissed by the supreme court. On
the 5th of April, 1921, the mayor and board of aldermen
met in regular session, and upon petition of the attorneys
of Kaye attempted to pass an ordinance increasing the
rates to be charged and fixing an increased rate dating
from the 10th day of August, 1920, to the 10th day of Au-
gust, 1921. It is further alleged that the petition on which
the pretended ordinance was passed was incorrect and mis-
leading, and stated things to be facts which did not exist,
and that the mayor and board of aldermen relied upon said
statements and were therefore misled and induced to pass
the said ordinance. It is further alleged that this ordi-
nance is null and void, and that the same was not passed
in the manner and form required by law, and that the said
ordinance is retroactive, vague, and indefinite, and that
Kaye is attempting to collect the charges for services as set
forth in the said ordinance and is endeavoring to collect
from the petitioners amounts named in the bill.

It is then alleged that it is the custom of Kaye to cut
off and discontinue supplying customers who fail to pay
the charges demanded by him, and that petitioners believe
that he will follow his usual custom if the said sums named
are not paid on or before the 16th day of April, 1921, and
thereby cause each of them irreparable injury and incon-
venience. It is further alleged that Kaye has no right

or authority to enforce the rates fixed in the pretended ordinance, and that a petition is being circulated calling for an election on said pretended ordinance, such petition being signed by more than twenty per cent of the electors of the town.

It is further alleged that, if the payments were made and the ordinances should thereafter be declared void or repealed by an election, it would necessitate a multiplicity of suits to recover the amount so paid. It is further alleged that Kaye has incumbered all of his property and is heavily involved and would have been losing money for years past, and that he is probably insolvent or has his property so arranged that it cannot be reached by ordinary process of law, but that the appellants are not charging insolvency, as they are not informed as to that further than the statements of the records in the county, and prays for an injunction.

The defendant answered the allegations with reference to fraud and demurred to the bill. The chancellor sustained the demurrer and dismissed the bill without declaring the ordinance void for the reason that the bill did not allege that the rates charged the appellants were unreasonable for the services rendered, and that there was no offer in the bill to pay a reasonable charge, nor any allegation as to what a reasonable charge would be, holding that the appellee was entitled to reasonable compensation for the services rendered.

We think the chancellor was correct in so holding, as the ordinance was not the foundation of Kaye's right to collect, but the foundation of his right was the furnishing of the water and electric current. The municipality has the right under statute to regulate the charges to be collected, but they must allow reasonable compensation to the owner of the water and electric power plant for his services rendered. In the absence of a valid ordinance fixing the rates the appellee had a right to recover reasonable rates. In the case before us the appellants must stand either upon the ordinance or upon a reasonable rate, and, while they at-

tack the ordinance as being void, they do not allege what is a reasonable rate, nor do they allege that the charges fixed constitute an unreasonable rate.

The judgment of the court below will therefore be affirmed.

*Affirmed.*