## CASTON et al. v. HUTSON et al.*

(Division A. June 1, 1925. Suggestion of Error Overruled July 2, 1925.)

[104 So. 698. No. 24485.]

1. INJUNCTION. *Award of attorney's fees to defendant, on what is in effect modification of temporary injunction, error.*

   Decree ordering dissolution of preliminary injunction, and then perpetually enjoining defendants from refusing to furnish water to complainants, so long as they pay rates charged to other customers, being merely a modification of temporary injunction originally granted, its award to defendants, as damages, of·attorney's fees for dissolution of injunction, is error..

2. WATERS AND WATER COURSES. *Water system held so impressed with character of public utility as to require service without discrimination.*

   Under facts, water system, put down in town before its incorporation, and using streets for mains, though without franchise from or contract with municipality, *held* so impressed with the character of a public utility that defendants, who fix and collect charges from consumers, even though operating at a loss, must furnish water without discrimination so long as the service to the public is continued.

---

*Headnotes 1. Injunctions, 32 C. J., section 737 (Anno); See 2 R. C. L., p. 194, et seq.; 2 R. C. L. Supp., p. 432 et seq., 4 R. C. L. Supp., p. 90, 5 R. C. L. Supp., p. 79; 2. Waters, 40 Cyc., p. 791; On right of water Company to discriminate between consumers as to rate, see note in 61 L. R. A. 113; 27 L. R. A. (N. S.) 674, L. R. A. 1915D, 1086; 27 R. C. L. 1449.

APPEAL from chancery court of Humphreys county.
HON. E. N. THOMAS, Chancellor.

Suit for injunction by Cecil M. Caston and others against F. M. Hutson and others. From the decree, complainants appeal, and defendants bring cross-appeals. Reversed in part, and in part modified and affirmed on direct appeal, and affirmed on cross-appeal.

*Jones & Womack,* for appellants.

The relief of a temporary mandatory injunction may issue in cases of extreme urgency, where the right is

clear, and where considerations of relative inconvenience bear strongly in complainant's favor. *Pearman* v. *Wiggins,* 103 Miss. 4, 60 So. 1. The outstanding facts were that complainants had a hotel, from which the water had been cut off, the complainants having paid water rent up to the last month preceding the filing of the suit, and a receipt for the payment had been issued by the defendant's water rent collector. Accepting these facts as true there could not be a doubt that complainant was entitled to the relief sought. *A. A. N. M. R. Co.* v. *Pennsylvania Co.,* 19 L. R. A. 393.

Caution is necessary in the issuance of an injunction, mandatory in character, preliminary to hearing upon its merits; however, courts may do so, and, when done and upon a hearing upon the merits it is determined that complainant was entitled to the relief sought against an invasion of a real right, it will not be said that the preliminary injunction was wrongfully issued. Especially would this hold where no question as to the right was raised. No contention is made that mandamus was the proper remedy, or that injunction was an improper remedy, and it is held that injunction is a proper remedy. 27 R. C. L. 1423; *Bienville Water Supply Co.* v. *Mobile,* 112 Ala. 260, 20 So. 742; 57 Am. St. Rep. 28; 33 L. R. A. 59; *Bourke* v. *Olcott Water Co.,* 84 Vt. 121, 87 Atl. 715; Ann. Cas. 1912D 108; 33 L. R. A. (N. S.) 1015; Note 81 Am. St. Rep. 479.

Defendants seek to avoid the injunction under the assumption that they are not a waterworks company, or public utility, but for purposes of meeting this argument reference is made to section 3886, Code 1906, section 6604 Hemingway's Code, with the light thrown upon the character of a waterworks as held in *Randall* v. *Smith,* 96 Miss. 674, 51 So. 917. It is further shown by the testimony of F. H. Hutson, husband and agent for K. S. Hutson, owner of the waterworks, that defendant furnished water to the public school. He says further; "It was put in for the accommodation of anybody in town."

No controversy, it would appear, is made that what a corporation may do, may also be done by an individual, and subject to the same laws. If an individual engages in a public enterprise, or devotes private property to a public use, it becomes subject to regulation. *Munn* v. *People of Illinois,* 24 U. S. (Law Ed.), 77.; *Barrington* v. *Commercial Dock Co.,* 33 L. R. A. 116. Individuals may even, provided the use be public, exercise the right of eminent domain. *Brown* v. *Beatty,* 34 Miss. 227. The question for determination is whether the use to which the enterprise is devoted is a public one, devoted to the whole public.

Hutson, appellee, frantically seeks to justify the cutting off of Caston's water alleging that Caston was wasting it, but he did not allege that he had ever warned Caston or that he had ever promulgated any regulations relative to the use, and from the testimony it will be seen that most of the water wasted from Caston's hotel was from a defective waste pipe under the sink in the kitchen, and only water was wasted that had already been used. Moreover Hutson collected the water rent right up to the time he cut Caston off. Hutson was using the streets of the town of Isola when the town was reincorporated about 1919, had been using the streets over ten years, and still uses the streets, moreover he was the mayor of the town.

By whatever right, privilege or franchise K. S. Hutson became a waterworks, she is a waterworks and has been for more than ten years using the streets or highways for her pipes, and serving the public, the whole public, continuously for compensation, with pipes conveying water into the Caston Hotel for over ten years without interruption. Those who contributed to the first cost abandoned control or claim to any right therein and turned over to Hutson the entire works, never received any return for their investment and never claimed any for a period of over ten years, and the use of the streets of the town of Isola by Hutson, so far as the present town goes, and its rights, would appear to be a vested right,

or .a continued existence of the old town, wherein
and in whose streets Hutson had an easement for his
water pipes or a franchise, with the essential right in-
cident and inalienable in the state or municipality to reg-
ulate and supervise.   In this case however the very
unique situation is presented of a waterworks, serving all
the inhabitants of a town, owned by an individual and that
individual, or her husband, the mayor of the town, and
controlling it.

A public utility is defined in the case of *Allen* v. *Rail-
road Commission,* 179 Cal. 68, 175 Pac. 466, 8 A. L. R.
261.   A water company is charged with the duty, public
duty, of furnishing water to all inhabitants alike, without
discrimination.   27 R. C. L. 1416.

No case can we find where the proof discloses a clearer
case of a public utility than the one here disclosed.   If
Hutson could cut off Caston he could cut off every other
person in the town.   So complete was the entire business
a public one, performing all the functions of a public
utility, that the entire public was invited to partake of
this life-giving and life-sustaining fluid, and the com-
plainants, operating their business within a few feet of
its perpetual flow, where in its plentitude it was being
cast upon the winds, he and his guests might, like an-
other Tantalus, perish in the very wash of it, crying
"Water, water everywhere, not any drop to drink."
Hutson is ungracious enough to aver that should the
Caston Hotel be supplied with water he will suffer irrep-
arable injury, but this passes comprehension, and must
necessarily be construed as injury to pride, rather than
the more substantial injury contemplated by the courts,
for which he might be soothed by an allowance. of dam-
ages.

*T. E. Mortimer* and *John A. Sykes,* for appellee.

WAS THE COURT'S ACTION IN DISSOLVING THE INJUNC-
TION PROPER?   There is no contention in this case that

the injunction sought and obtained by complainant was not a mandatory one. To determine, therefore, whether or not a mandatory injunction was properly obtained in the first instance, and whether or not the court's action in dissolving the same was correct, it is necessary first to understand the principles of law with reference to mandatory injunctions. 14 R. C. L. 317, sec. 15; *Pearman* v. *Wiggins,* 103 Miss. 4, 60 So. 1; *Gulf Coast Co.* v. *Bowers,* 80 Miss. 570, 32 So. 113; 6 Pomeroy's Equity, par. 636; 22 Cyc. 743.

A mandatory injunction should never have been issued in the first place, and the court's action in dissolving the same upon the hearing of the motion to dissolve was eminently correct.

The whole gist of complainant's bill with reference to the tank was that it leaked so badly that the water was blown upon his premises to such an extent as to cause the injury complained of. This of itself was a question of fact. To meet it, Mr. Hutson cut off the appellants' water and demonstrated to a mathematical certainty that the wet and boggy condition of the premises was the result of the leaky condition of appellant's own water pipes, because when the water was cut off, the wet places dried up. In addition photographs were introduced at the hearing, which negatived the charges in the bill, and also the testimony of many witnesses, including a plumber whom the Castons consulted with reference to repairing their pipes. All of which was to the effect that appellees were blameless, and appellants, alone, at fault.

When the chancellor dissolved the injunction he allowed the defendants as damages an attorney's fee of two hundred fifty dollars.

This was not all the damage, however, that the defendants had sustained as a result of the issuance of this mandatory injunction, and the failure of the Chancellor to allow these other damages is assigned as error by the Hutsons in their cross-appeal. Counsel for appellants seems to think that the defendants were not entitled to

any damage they sustained by virtue of having to at once repair the water tank, because appellees were already undertaking to do something which they were already attempting to do.

The one thing that counsel overlooks is that, had the appellees been left alone in the repair of this tank, the same could have been accomplished for a very small sum, comparatively speaking, but on account of the mandatory injunction, they were compelled to repair it at once, and as is the case with everything which must be done immediately, or in an emergency, it always costs a great deal more than otherwise.

WERE THE APPELLEES OPERATING A PUBLIC UTILITY? The requisite elements of a public utility are set out in *Allen v. R. R. Commission,* 179 Cal. 68, 175 Pac. 466, 8 A. L. R. 261. Under the definition, therefore, in order that this water system be a public utility, the public generally must have such a right to its service as would entitle them to go into a court of justice and demand that these services be continued. This right is not a figment of the imagination, but must be an actual, existing and substantial right, and must arise, just as any other rights, either by law or by contract. Bearing this in mind, it is in order to analyze the facts of this case to see if the public of Isola, either at the inception of this well, or later, acquired such a right by contract, and if not, whether such a right was bestowed upon them by law, either then or later.

Considering that phase of the testimony that the well was bored for the public, the most that can be said of this is that at the time the well was sunk, it was the intention of the contributors that any surplus should be given to the public. It could hardly be argued that this intention could arise to the dignity of a promise, but looking at it in both lights, i. e., either as an intention, or as a promise, the same is not supported by a consideration of any kind, and is, therefore, a *nudum pactum,* and being a *nudum pactum,* would confer no right upon the

public, any member thereof, or upon the town of Isola, when later incorporated, to go into a court of equity and demand that these individual contributors furnish them water.

This was the *status* of the well at its commencement. Has anything since been done or taken place, which would give the public, or any member thereof, this right? The testimony shows that the agreement among the contributors was that, inasmuch as the well was upon the property of Mrs. Hutson, the ownership to same was in her, but that these contributors should have water as long as the well existed. There is no question that they had a vested right to the water from this well, but that question is not involved in this case.

These gentlemen out of a feeling of generosity, and public spiritedness, permitted any one who would, since there was a surplus, to connect with the well and use the water therefrom free of cost. This right, however, was merely permissive, at the sufferance and will of the contributors, and could have been revoked at any time. To strengthen this argument: suppose the well had later slackened its flow, and become insufficient to supply any one, but the contributors. Could they not have cut off every one other than themselves?

Remember, that at this time no tank had been erected, no engine installed and the pressure from the well was sufficient. There was no expense attached to operating the well. When a connection was made, that was the only money any one expended, and the water was used absolutely free of any cost whatsoever. Remember also that these users whom we are now discussing, were not contributors, and were not interested in the well in any other wise: that after Mr. Hutson tells us that so many people connected on to the well that its natural pressure was not sufficient to get the water over town; the conditions being that when the people nearest to the well turned on their water, those fartherest away could get no water.

To remedy this, and again animated only by the desire that everybody connected might get water, Mr. Hutson, at his own expense, installed a tank and engine, which compelled the employment of a man to operate it. It was never attempted by Mr. Hutson to collect from the users or the contributors the expense of making this improvement, but thereafter he did assess each user a sum sufficient to pay the operating expenses, which were oil, gasoline, and the man to look after the engine. Whether or not the consent of the users was obtained to bear this expense, the proof shows that the cost of operation subsequently was assessed against the well, and each user taxed *pro rata* cost of operation, and the same was paid without demur.

As a matter of fact, no charge has ever been made for water, and the money which is now paid by the users, and which has been paid in the past, is not for water, but is for the cost of getting the water to them. In other words, Mr. Hutson is not running a waterworks system for hire. He pays his *pro rata* of the expense, just like every other user pays his *pro rata*. Therefore section 6604, Hemingway's Code, cited by counsel, and *Randall v. Smith*, 51 So. 917, also cited by counsel, do not apply, because that statute expressly refers to water systems operated for hire, and in the Randall case, Mrs. Randall was operating an artesian well for hire under a franchise from a municipality.

The testimony does not even show that Mr. Hutson paid a license for operating this well, and inasmuch as he was not operating a well for hire, he did not have to pay the license. The case of *Danciger & Co.* v. *Public Service Commission*, 275 Mo. 483, 18 A. L. R. 754, referred to by counsel in his brief as an authority in our favor, is not as strong a case as the one at bar. There is an extensive note at the end of this case in 18 A. L. R., going into this proposition, and we refer the court to it. *Story* v. *Richardson* (Cal.), 18 A. L. R. 750, also bears us out. See, also, *Water Co.* v. *Eshleman* (Cal.), 140 Pac. 591, 948.

139 Miss.—57.

We do not think that the time has come in the history of this state, when our court will so burden an act of goodness and kindness as to make it henceforth something too dangerous to indulge in, but rather something to be unthought of and avoided at all hazards.

Argued orally by *H.. F. Jones,* for appellants, and *T. E. Mortimer,* for appellees.

Cook, J., delivered the opinion of the court.

The appellants filed a bill in the chancery court of Humphreys county, averring in substance that they were the owners of certain property in the town of Isola, Miss., upon which is located a hotel building, which is operated by them, and in which they live; that adjoining this hotel property is a lot owned by K. S. Hutson, defendant in the court below, and one of the appellees here, upon which is located an artesian well, engine, and pump, a water tower or tank, and other equipment necessary for furnishing water to the inhabitants of said town of Isola; that the said K. S. Hutson owns and operates this waterworks system for hire, and furnishes water to the inhabitants of the town, and that she has so operated this waterworks system for many years, using the streets of the town for laying water mains to which the various residences and buildings in the town are connected; that for about a year prior to the filing of the suit the appellees had permitted this water tank to be and remain in a leaky condition, and as a result thereof water from the tank or tower was blown across and onto the property of appellants to such an extent that it greatly damaged the land, building, and business of appellants; that appellees ignored the repeated protests of appellant, and refused to repair the tank, and finally, in a fit of anger cut off the pipes running from the water main to the hotel, although all demands for water rent were fully paid, and that in removing said pipes the employees of appellees

had dug and left open certain ditches and other excavations on the property of appellants. There are many other averments of the bill which we deem it unnecessary to here set out. Upon the bill a preliminary mandatory injunction was granted requiring the appellees to at once proceed to repair the water tank so as to cease casting water over and upon the property of appellants; requiring them to repair the pipes which formerly extended onto and into the appellants' lot in such a manner that they might obtain water; requiring them to fill up the ditch or trench dug by the servants and employees of appellees in front of and upon the property of appellants; requiring them to reconnect the pipes, mains, and well with the residence and hotel of appellants, so that they could obtain and use water from this well; and enjoining the appellees from further interfering with the use by appellants of the water from said pipes and well, and from trespassing upon the property of appellants.

The appellees answered the bill, and filed a motion to dissolve the injunction, and at the hearing of this motion it was agreed that upon the proof to be offered there should be a final determination of all issues presented. At the conclusion of the testimony, the chancellor entered a decree, first dissolving the injunction granted, and allowing two hundred and fifty dollars as attorney's fees for the dissolution of the injunction; and second, granting an injunction enjoining and restraining the appellees from refusing to furnish water to the appellants, upon their paying such reasonable rates as are charged other consumers for like services, and upon their complying with such reasonable rules and regulations as are charged other consumers, and perpetually enjoining appellees from refusing to furnish water to appellants in their said residence and hotel property, so long as said rates are paid and the said rules and regulations are complied with by appellants.

The facts material to a decision of this case are practically uncontroverted. From the testimony it appears

that about twelve or fourteen years ago the appellees and a few other citizens of the town of Isola entered into a scheme for the boring of a deep well for the purpose of securing pure drinking water. At the inception of the plan it was entered into as a co-operative enterprise for the use of themselves, all contributing to the expense and sharing the benefits. The appellees contributed more toward this enterprise than the others and the well was bored on the land of the appellee K. S. Hutson, and water mains or pipes were laid along and under the streets of the town, which was then an unincorporated village. The subscribers to the fund for boring the well connected with these mains, the water being forced through the pipes by the force of the natural flow of water from the well. After this water system was installed it was found that there was water largely in excess of the needs of the original subscribers, and permission was granted to the citizens generally of the municipality to connect with the mains and well, each consumer paying the expense of making his connections with the water mains. In the course of time the number of consumers became so large that the natural flow of the water was insufficient to furnish the force necessary to place the water in the homes of the various users thereof, and it became necessary to have a small engine and pump and a water tower or tank in order to continue to furnish sufficient water. All of the original subscribers to the enterprise except the appellees withdrew or declined to furnish additional funds, and, by the tacit consent of all concerned, the appellees took over the enterprise, installed the necessary machinery and equipment, extended the mains, and otherwise added to the efficiency of the operations of the plant. Thereafter the appellees assumed full control of the entire system, established a monthly charge for the use of the water, employed the necessary labor for the supervision and operation of the plant, and continued to furnish water to all the residents of the town who desired to use the water, and who would at their own expense con-

nect with the water mains. Under this arrangement practically all the residents of the town connected with these mains and used the water from this well, paying to the appellees the monthly rental fixed by them for the use of the water. The appellee F. M. Hutson, who managed and operated this water system, testified that every resident of town and community was permitted to connect his premises to these mains without restrictions other than the payment of the expense of making the connections, and that the monthly charge or rental fixed and collected by him was intended to cover the actual cost of labor, material, and repairs incurred in the operation of the system; that the monthly rental collected, and which had not been increased or changed for several years, was insufficient to meet the actual expense of operation, and that the system had been operated at a loss for several years.

At the time the well was originally bored the town of Isola was unincorporated. Thereafter it was incorporated, but forfeited its charter, and was later reincorporated as Lake Lawson. This charter was likewise forfeited, and several years thereafter was again incorporated as the town of Isola. The appellees were never granted a franchise for the use of the streets of the town in the operation of this water system, and the municipal authorities never exercised any sort of control or supervision over the system.

There was some slight conflict in the testimony as to whether the excavation in front of appellants' premises was filled before or after the service of the writ of injunction, but there was no testimony whatever that the leaky or defective condition of the water tank caused any water to fall across or onto the premises of appellants.

The decree of the court below, in the first paragraph thereof, orders the dissolution of the preliminary injunction, and awards damages, while in the second paragraph the defendants are perpetually enjoined from re-

fusing to furnish water to the appellants so long as they pay the rates charged to other consumers, and comply with all reasonable rules and regulations in the use of the water as are applicable to other consumers. As we construe this decree, it is, in effect, simply a modification of temporary injunction originally granted, and if the decree is correct in retaining the injunction to the extent of requiring the appellees to continue to furnish water to the appellants, the decree should be reversed in so far as it awarded attorney's fees as damages. The controlling question for decision then is, whether or not, under the facts and circumstances herein detailed, this waterworks system was so impressed with the character of a public utility that, within the territory served by it, the public generally has the right to demand that the service be furnished, without discrimination, to those complying with all reasonable rules and regulations in the use of water and paying the reasonable charges therefor?

The testimony is that this well, mains, and other equipment were put down for the accommodation and use of anybody in the town; that whoever bought a lot in the town of Isola was entitled to a hydrant and use of the water, on the condition that he would pay the expense of a connection and his proportion of the expense of operation of the plant; that this waterworks system supplied water to the public school, the stores, and practically all of the residences in the town, and that this public service and use of water had continued for many years. The appellees used the streets of the municipality for the purpose of laying and extending the water mains. They fixed the rates to be charged the consumers for the use of the water, without any attempted supervision on the part of the municipal authorities, and collected these monthly charges from all the consumers, including appellants, for many years. The consumers had nothing to do with the method or manner of operation, or the costs thereof, or the amount of the charges

for the use of the water, and the fact, if it be a fact, that the waterworks was operated at a loss does not change the character of the operation from that of one for hire.

The appellees have no franchise from or contract with the municipality, and the right to discontinue the service entirely is not here involved, but we are clearly of the opinion that under the facts the appellees have dedicated this water and plant to the public service and use to the extent that, within the territory served by it, the public generally, and particularly that portion of it that has been served, and has accepted the service, may demand and require that, so long as the service is continued, it shall be furnished to the individuals without any sort of discrimination. The decree of the court below, however, perpetually restrains the appellees from refusing to furnish water to the hotel and residents of appellants, so long as they pay such reasonable rates and comply with such reasonable rules and regulations as are applicable to other consumers, and we are of the opinion that the language of this restraining order should be further limited so as to require such service only so long as the service to the public is continued.

Upon this record, there is no merit in the cross-appeal, and the decree of the court below will be affirmed on cross-appeal, and on direct appeal will be reversed, in so far as it allowed attorney's fees as damages, and modified, in accordance with the directions herein contained. *Reversed in part, and affirmed in part on direct appeal, and affirmed on cross-appeal.*