# ALMARAS *v.* CITY OF HATTIESBURG.

(Division B. April 18, 1938. Suggestion of Error Overruled May 16, 1938.)

[180 So. 392. No. 33157.]

**Hannah & Simrall,** of Hattiesburg, for appellant.

E. J. Currie, of Hattiesburg, for appellee.

Argued orally by **T. C. Hannah,** for appellant, and by **E. J. Currie,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, P. G. Almaras, brought suit against the City of Hattiesburg for $468.01, alleged overcharges for water furnished from the city waterworks. He states that the city was under the commission form of government, operating under chapter 108 of the Laws of 1908; and alleges that for many years the city owned and operated a municipal waterworks system, for the sale and distribution of water to its inhabitants; that on the 29th day of June, 1918, the mayor and commissioners of the city passed Ordinance 574, fixing the rates and charges for water supplied to the inhabitants, businesses, and industries of the city from the waterworks plant. He fur-

ther alleged that he had been engaged in the restaurant business in Hattiesburg for about eight years prior to October 1, 1933, operating under an ordinance fixing the rate for restaurants at between $10 and $50 per annum, but providing no rule for the application of the minimum and maximum rates, and under this ordinance he paid the maximum sum, or in excess thereof; that about the 1st of October, 1933, he moved from his location at 516 Main street, known as the Jackson building, to 514 Main street, to a place known as the Sarphie building, at which time he was indebted to the city in the sum of $65 for water previously used; that after he moved into the Sarphie building he continued to use the city water, from October 1, 1933, to April 1, 1937, which under the rate of $50 per annum would have amounted to $175; adding to this the sum of $65 which he already owed, he would have been liable for a total of $240. He further alleged that the building into which he last moved had a meter in it prior to his becoming a lessee, and that the city claimed that he was liable for meter rates, which was 15 cents per thousand gallons, plus 25 cents per month meter rent; that he did not desire the meter, preferring to continue on the flat rate, at the maximum of $50 a year, and refused to pay the meter rates until compelled to do so by a threat that the water supply would be cut off by the city; that he had paid amounts on account for some time before said peremptory threat was made; and that the city had made charges amounting to $743.01, which was $468 in excess of what he owed. He alleged that the city waterworks had a monopoly in furnishing water to its inhabitants, and that it was necessary for him to pay the amount claimed in order to continue the operation of his business; and he prayed judgment against the city in the sum of $468.01, which he claimed to be in excess of the amount owing to the city by him.

Hattiesburg continued to operate under the rates promulgated in 1918 until October, 1936, when it established meter rates by another ordinance. The ordinance

of 1918 fixed a number of rates between maximum and minimum figures, without any criterion for determining the intermediate charge for various kinds of business; for instance, on soda fountains the rate was from $25 to $60; on dental offices from $10 to $20; on restaurants from $10 to $50; on boarding houses from $10 to $20; on hotels from $10 to $50; and on livery stables from $20 to $50, with an additional $5 for every additional faucet. Under the heading, "meters," the rate was stated at 15 cents per thousand gallons, and a charge of 25 cents per month for meter rent, without classification of users of meters, or requirement that any particular business or person should install or use the meters. There was no contract in this case other than the facts stated, which do not under the law constitute a contract to use the meter, the plaintiff having protested against its use, and refused to pay meter rates until compelled to do so under penalty of having his water connection discontinued by the city.

The ordinance of 1936 fixed meter rates at varying amounts under certain classifications in proportion to the amount of water consumed. Under the classification within which the plaintiff's business would fall, according to the amount of water consumed, the rate would be 17 cents per thousand gallons. In practice, the city permitted various customers to depart from these rates, granting rates different from those paid by others, even permitting some to continue on a flat rate without meters, and in a few cases where meters were used charged a flat rate without reading the meters.

While the city is permitted, within reasonable limits, to classify rates in a practical business manner, determined by practical standards for securing practical justice, it must use reasonable classifications, having proper relation to the Code requirements as a whole. There is no guide, under the flat rate of 1918, by which to fix the charge between the minimum and maximum rate for a restaurant; that seemed to have been left largely to

the personal judgment of the collector or superintendent of the waterworks department. In other words, it was possible, under the ordinance, to charge a customer using large quantities of water a less rate than a customer using little; or to charge a customer using a large quantity a different rate from another using practically the same quantity; and this seems to have been done in some instances, both as to the flat rates, and as to the meter rates.

In operating the waterworks plant, the city is operating a public utility, and must treat all alike within the same classification, making the same charge for water used. This it did not do in the present case. Before the ordinance of 1936, there was no legal standard by which to judge the fairness and equality of the charge with reasonable certainty.

In support of the judgment, it is argued on behalf of the city that inasmuch as the appellant used the meter knowing that the city was charging him meter rates, in effect he contracted to pay the amounts charged; and since the meter rate was not shown to be unreasonable, he was legally bound to pay it, although others in the same business, using approximately the same amount of water, might be on a flat rate and paying less. This contention is not sound, because the ordinance must have reasonable standards, and the rates for water furnished must be reasonable and substantially equal to all within the same classification, or engaged in the same business. Furthermore, the plaintiff did not voluntarily use the meter, but used it under protest, refusing to pay the meter rates until coerced into doing so. The rates must not be discriminatory. See Caston v. Hutson, 139 Miss. 890, 104 So. 698. The plaintiff testified that the rates were reasonable, and that he was not complaining of them, but of being discriminated against, insisting that he should have the same as his competitors in business.

A person situated as was the plaintiff, and using the water, is under the duty to pay a reasonable rate for such

use, even though the ordinance undertaking to charge him a specific rate was void. In Vicksburg Waterworks Co. v. Yazoo & M. V. R. Co., 102 Miss. 504, 59 So. 825, it was held that where the consumer is not misled by the neglect of the waterworks company in failing to have an accurate meter to correctly measure the water used by the consumer, the city would not be estopped from charging for the amount of water actually consumed. In Bell v. Kaye, 127 Miss. 165, 89 So. 910, it was held that rates fixed by a municipal ordinance cannot be enjoined unless it is alleged that they are unreasonable, and without offering to pay a reasonable rate.

Applying these principles to the case at bar, upon his own testimony the plaintiff was liable for the reasonable charge for water consumed, as measured by the meter. He admits that the rate was reasonable. He is not prejudiced by the judgment of the court holding him liable, although the court may have been in error in the reasoning by which it reached its decision. The circuit judge did not render a written opinion, and it must be assumed that he applied the law correctly, since his judgment was correct. Upon demand being made for meter rates, the plaintiff did not proceed to compel the furnishing of the service at the same rate which was paid by those using flat rates; nor did he seek to compel the city to make a proper classification, giving fair and equitable rates to all users of water therein. He elected to use the water; and notwithstanding the fact that the rates were not properly classified, he is liable for the amount used, at a reasonable rate—and in his own testimony he stated that the rate charged was reasonable. Consequently, the judgment of the court below will be affirmed.

Affirmed.